UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JOHN Q. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:12-CV-24-HEA |
| | ) |
| GARY CAMPBELL, et al., | ) |
| | ) |
| Defendant(s). | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of John Q. Adams (registration no. 522060), an inmate at the Northeast Correctional Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $155.07. See 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will order the Clerk to issue process or cause process to be issued on the complaint relative to plaintiff's 42 U.S.C. § 1983 deliberate indifference claims.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must

assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. Id.

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $85.80, and an average monthly balance of $775.37. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $155.07, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either

law or in fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**The Complaint**

Plaintiff, an inmate at the Northeast Correctional Center ("NECC"), brings this action for monetary damages pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. The named defendants are Corizon Medical Services, Inc. ("CMS"), Gary Campbell (CMS medical doctor), T. Bredeman (CMS medical doctor), Elizabeth Conley (CMS medical doctor), Thomas Cabrera (CMS medical doctor), Robert Griggs (NECC Assistant Warden), Chantey Goddert (NECC Assistant Warden), Doug Prudden (NECC Warden), and Unknown Vetter (NECC Correctional Officer).

## A. Claims under § 1983

Plaintiff's claims arise out of two inmate assaults that occurred at NECC on approximately June 6, 7, or 8, 2011. Plaintiff alleges that, while sitting with friends at a picnic table in the recreation yard, he was severely beaten by another "unknown inmate," in the presence of "no less than ten correctional officers," resulting in severe injuries to plaintiff's face and torso. Plaintiff claims that not one of the correctional officers, including defendant Vetter, "answered [his] loud pleas for and obvious need for protection." In addition, plaintiff asserts that after finally freeing himself from the attack, he "made it back into his wing and room," in Unit 3, only to be attacked again. Plaintiff claims that Vetter, and others not presently named as defendants, knowingly and intentionally proceeded to "let the perpetrator into the front gate of three house . . . and into plaintiff's cell, where he was again beaten relentlessly and then . . . dragged out . . . by his hair and beaten for fifteen more minutes." More specifically, plaintiff claims, "Once inside plaintiff's living quarters, [the inmate] continued his brutal and relentless assault on plaintiff's face and torso, severely injuring plaintiff's face by breaking [his] cheek bone and causing massive neurological damage to plaintiff's face, spine, arms, bones, ligaments, tendons, and other injuries." Plaintiff states that the vicious attack occurred "in the defendants [sic] clear, unobstructed

4

direct line of sight," during which plaintiff was making "loud, continuing pleas for help."

Thereafter, Vetter allegedly gave plaintiff a false conduct violation for fighting. Although plaintiff "expressed severe pain in the cheek bone . . . sharp nerve pain about the facial area, neck and spine, and other lacerations, contusions [and] severe facial swelling . . . he was sent to the hole absent emergen[cy] medical attention . . . and facial reconstruction for the severely broken cheek bone." It is unclear exactly when plaintiff was given medical attention, but he states that defendant Cabrera initially asked defendants Campbell, Conley, Bredeman, and CMS to send plaintiff to a specialist for his broken face. Because of CMS' allegedly unlawful policy "to deny expensive facial and nerve reconstructive surgeries due to the costs and not medical necessity," defendants "made their risk assessment and all determined to deny" this treatment to plaintiff. Plaintiff states that he has been "left to suffer in severe nerve, bone, ligament, tendon and muscular pain, while his cheek bone has deformed and not properly healed, causing further chronic, severe pain."

Plaintiff further alleges that despite his "multiple letters," personal conversations, and pleading with defendants Prudden, Griggs, and Goddert to remedy the lack of medical attention, they "made no meaningful attempt to investigate . . . or intervene on [plaintiff's] behalf," and "thereby tacitly authoriz[ed] the medical

5

contractors' unconstitutional actions or inactions." Moreover, plaintiff states that he was found guilty of the allegedly false conduct violation for fighting, even though the entire attack was captured and preserved on video tape and compact disk. Plaintiff claims that CMS and the defendant doctors now tell him that "due to the delay in the surgery, the nerve damage and bone disfiguration is permanent and [he] will have to suffer a lifetime of pain and suffering." Plaintiff states that he has "continued, severe nerve, bone and other pain in the head, face, mouth, neck, cervical and thoracic spine to the extent that [he] cannot sleep." Although he continues to seek medical care, plaintiff states that defendants castigate him for making medical requests and deny him medical treatment.

The Court finds that plaintiff's § 1983 Eighth Amendment claims survive frivolity review and are sufficient to proceed at this time. The Court will, therefore, order all defendants to reply to plaintiff's § 1983 claims.

**B. Claims under § 1985**

Title 42 U.S.C. § 1985 concerns conspiracies to interfere with civil rights. Although plaintiff does not specify under which subsection of § 1985 he is proceeding, the Court will liberally construe the allegations under § 1985(3), which provides in pertinent part:

> If two or more persons . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Thus, to state a claim under § 1985(3), a plaintiff must establish that (1) he is a member of a class suffering from invidious discrimination; and (2) defendants' actions were motivated by racial animus or some other type of class-based discrimination. United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 834-39 (1983); Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971) (plaintiff must allege these two elements to state § 1985(3) claim).

In the instant action, there is no indication that plaintiff is a member of a protected class or that defendants were motivated by purposeful discrimination. Moreover, "a conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010)(citations omitted). Plaintiff's factual allegations in the case at bar do not suggest such a "meeting of the minds" among the defendants. For these reasons, plaintiff's 42 U.S.C. § 1985(3) claims will be dismissed under § 1915 (e)(2)(B).

## C. Section 1981 Claims

Title 42 U.S.C. § 1981 provides in pertinent part:

> All persons . . . shall have the same right . . . to make contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a claim under § 1981, a plaintiff must demonstrate that the defendants purposefully and intentionally discriminated against him on the basis of race. See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982); Edwards v. Jewish Hosp., 855 F.2d 1345, 1351 (8th Cir. 1988). The instant complaint contains no facts indicating that any actions taken by defendants were motivated by purposeful race discrimination against plaintiff. Therefore, plaintiff's § 1981 claim will be dismissed as legally frivolous.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $155.07 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include

upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that, if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that, as to plaintiff's 42 U.S.C. § 1983 claims, the Clerk shall issue process or cause process to issue upon the complaint as to all defendants.

**IT IS FURTHER ORDERED** that plaintiff's 42 U.S.C. §§ 1981 and 1985(3) claims are **DISMISSED**, without prejudice, as legally frivolous and for failure to state a claim or cause of action. See 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that defendants shall reply to plaintiff's § 1983 claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

A separate Order of Partial Claim Dismissal shall accompany this Memorandum and Order.

Dated this 6th day of April, 2012.

_____
**UNITED STATES DISTRICT JUDGE**