UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN Q. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:12CV24 HEA |
| | ) | |
| GARY CAMPBELL, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Corizon, Inc., Cabrera, Campbell, Bredeman, and Corley's Motion for Summary Judgment, [Doc. No. 54]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted.

## **Introduction**

Plaintiff, was an inmate at the Northeast Correctional Center, Bowling, Missouri. Plaintiff filed the instant Section 1983 *pro se* Complaint against Defendants in which Plaintiff alleges that defendants denied him medical treatment, that this denial was deliberately indifferent, and that defendants' actions violated this constitutional rights under the Eighth Amendment. Plaintiff contends that he was injured by an attack on him by another inmate. According to

plaintiff's allegations, he suffered a "busted cheekbone" as a result of the attack, which occurred on June 6, 2011. The Complaint further sets forth allegations of events which have occurred regarding plaintiff's medical condition. Plaintiff has named Corizon, Inc., Cabrera, Campbell, Bredeman, and Corley as defendants responsible for the alleged deprivation of Plaintiff's constitutional rights.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Facts and Background[1]

Plaintiff was an offender in the custody of the Missouri Department of Corrections. During the time period relevant to Plaintiff's Complaint, Plaintiff was confined at Northeast Correctional Center in Bowling Green, Missouri. Defendant Corizon, Inc. has a contractual agreement with the State of Missouri to provide medical services to offenders in the Missouri Department of Corrections. Defendant Dr. Tomas Cabrera is a physician licensed in the State of Missouri who is retained as an independent contractor physician by Corizon to provide medical care to offenders incarcerated at Northeast Correctional Center. Defendant Dr.

---

[1] Plaintiff does not specifically controvert defendant's Statement of Uncontroverted Material Facts. Pursuant to the Court's Local Rules, failure to controvert the facts renders them admitted.

Gary Campbell is a physician licensed by the State of Missouri who is retained as an independent contractor physician by Corizon to provide medical-related services. Defendant Dr. Thomas Bredeman is a physician licensed by the State of Missouri retained by Corizon, Inc. to provide medical-related services as the Associate Regional Medical Director. Defendant Dr. Elizabeth Conley is a physician licensed by the State of Missouri employed by Corizon, Inc. as the Missouri Regional Medical Director.

The issue in this case with regard to Defendants is the care and treatment provided to Plaintiff following injuries he sustained in an altercation with another inmate on or about June 6, 2011. Plaintiff alleges that the "lack of proper medical care, that's the basis for the lawsuit." Plaintiff relies upon the medical records in support of his allegation that he was not provided with proper medical care.

Plaintiff alleges he suffered a "busted cheekbone" as a result of the incident on June 6, 2011. Plaintiff received medical care following the June 6 injury, including evaluations by Dr. Cabrera and specialist Dr. Wanless.

Plaintiff alleges that the injuries to his face required "facial reconstructive surgery and potential nerve graph surgery" and that Corizon, Inc. violated his Eighth Amendment rights by not providing him with same.

Plaintiff admits that Dr. Cabrera has never made any statements to him that

evinced deliberate indifference to his medical needs. Plaintiff alleges that Dr. Cabrera was deliberately indifferent in that he "didn't fight hard enough or didn't explain it good enough to whatever about my face, what's wrong with it, why it's still numb all the way through here and all, to get them to take me to a doctor that I needed to be taken to get it fixed."

Plaintiff alleges that Dr. Bredeman was deliberately indifferent in that he "denied me being taken out to see a specialist." Plaintiff cannot articulate how either Dr. Conley or Dr. Campbell was deliberately indifferent to his medical needs, and admits that he has never met or communicated with either defendant.

Plaintiff admits he saw "a lot of doctors that first week or so" following the injury. Plaintiff received medical attention both from Dr. Cabrera at the facility and from an outside specialist in Moberly, Missouri for his complaints about his cheekbone/face.

On June 6, 2011 (the date Plaintiff sustained his injuries), Nurse Denise Morris examined Plaintiff and observed the following: "skin tear r[igh]t elbow[,] movement within normal limits, reddened area l[ef]t anterior rib area, denies any problems breathing, abrasion r[igh]t post[erior] shoulder, open skin tear l[ef]t facial cheek area lat[eral] to l[ef]t eye, l[ar]g[e] hematoma l[ef]t eye, denies any visual changes, blood noted from mouth, small open area to r[igt] lower lip,

bleeding all areas contained on presentation." Nurse Morris cleaned Plaintiff's injuries with saline, bandaged his left elbow, and provided Plaintiff with ice for his eye.

Dr. Cabrera was notified and ordered an x-ray of Plaintiff's face. Nurse Melanie Powell also assessed Plaintiff on June 6, noting Plaintiff had "facial bruising and swelling" and that Plaintiff denied any visual impairment. Nurse Earl Cox examined Plaintiff on June 7, 2011 and noted "each eye is swollen with periorbital bruising" and that Plaintiff "denies change in vision." An x-ray was taken of Plaintiff's face on June 7, 2011. The x-ray taken on June 7, 2011 stated "on a single image there is suggestion of right intraorbital fracture" and the "zygoma and lateral maxilla appear intact."

Nurse Christina Craven examined Plaintiff on June 13, 2011, for his complaints that his medical lay-in had not been renewed and that his right upper lip bled when he brushed his teeth. Nurse Craven noted that no signs or symptoms of infection were present with regard to Plaintiff's lip and provided him with bacitracin ointment for his lip and scheduled antiseptic mouthwash treatments in the medical department, which were performed June 13-17.

On June 17, 2011, Dr. Cabrera examined Plaintiff's face and cheek and referred Plaintiff to an outside specialist, Dr. Wanless, whose offices are in

Moberly, Missouri, for further evaluation. The consultation with an outside specialist was approved by Regional Medical Director Bynum on June 21, 2011.

On July 11, 2011, Nurse Linda Wiley examined Plaintiff for his complaint that the right side of his face was numb; the nurse observed that Plaintiff's "facial response is symmetrical" and that Plaintiff would be seen by an outside physician for further evaluation.

On July 15, 2011, the outside specialist, Dr. Kirk M. Wanless,2 examined Plaintiff and determined that Plaintiff's injury "may resolve in six months or less" and was "unlikely to need any surgical intervention."

According to the information made publicly available on the Missouri Board of Healing Arts' website, http://www.pr.mo.gov/healingarts.asp, Dr. Wanless is Board-certified in head and neck surgery. Plaintiff admits that he was told by Dr. Wanless not to worry about his cheekbone or any nerve damage and that Dr. Wanless told him the June 6 injury would "heal itself in six to eight months." Dr. Wanless recommended that Plaintiff's dental plate be adjusted, which was performed by a dentist on July 19, 2011.

Plaintiff was scheduled to be seen by Dr. Cabrera on September 16, 2011, but refused his medical appointment.

While Plaintiff continued to see medical practitioners in September,

October, November, and December 2011, he did not make any additional complaints concerning his cheek or face during that time period. The next time Plaintiff complained of any issues with his face was on January 31, 2012, when he was seen by Nurse Melanie Powell for his complaint of facial numbness. Nurse Powell examined Plaintiff's face and observed that Plaintiff had an "equal smile, no drooping noted . . . . face is equal in temp."

On February 6, 2012, Dr. Cabrera examined Plaintiff and ordered another x-ray of Plaintiff's face. The x-ray stated "subtle cortical irregularity along the right infraorbital plate" that "may be attributable to old injury." Dr. Cabrera requested a second referral to Dr. Wanless, which was reviewed by Dr. Bredeman on or about February 21, 2012.

Plaintiff has never met, does not know, and has never communicated with Dr. Bredeman, and Dr. Bredeman never personally provided medical care to the Plaintiff.

Since there were no changes to Plaintiff's prior x-ray results and therefore "no new findings for surgical intervention noted," Dr. Bredeman suggested that Dr. Cabrera consult with Dr. Wanless concerning Plaintiff's condition; he also noted that Dr. Cabrera could resubmit the referral request if indicated following the consultation with Dr. Wanless.

On March 7, 2012, Dr. Cabrera consulted with Dr. Wanless concerning Plaintiff's cheek; Dr. Wanless' opinion was that the chances of Plaintiff's facial numbness improving with surgery were "very minimal."

Plaintiff does not dispute that Dr. Wanless told Dr. Cabrera that surgical intervention was unlikely to improve Plaintiff's facial numbness, but Plaintiff disagrees with Dr. Wanless' medical opinion.

Dr. Cabrera is the only named defendant who personally provided any medical care to Plaintiff.

Plaintiff named Dr. Campbell as a defendant because Dr. Campbell's name was on a list as being affiliated with "medical over this institution." Plaintiff admits that he has never met, does not know, and has never communicated with Dr. Campbell.

Dr. Campbell and Dr. Conley also never personally provided medical care to Plaintiff, as the Plaintiff has never met either of them. Plaintiff admits that he has never met, does not know, and has never communicated with Dr. Conley, and named her as a defendant because Plaintiff found Dr. Conley's name on a list of individuals associated with the medical part of the correctional facility.

**Summary Judgment Standard**

The standards for summary judgment are well settled. In determining

whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine dispute of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). A dispute of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his

allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court will review the facts in this case with the stated standards in mind.

### **Discussion**

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Wison v. Seiter*, 501 U.S. 294, 298 (1991)." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). To prevail on a deliberate indifference claim against defendant, plaintiff must show he suffered from a serious medical need and defendants knew of, yet disregarded, the need. *See Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000); *Roberson v. Bradshaw,* 198 F.3d 645, 647 (8th Cir.1999).

Defendants contend they are entitled to summary judgment on the claims against them.

Plaintiff has failed to create any genuine issues of material fact regarding his

Eighth Amendment claims against Defendants. While plaintiff's claims may satisfy the objective aspect of the two prong test showing that he has serious medical needs, see *Roberson*, 198 F.3d at 648 (need or deprivation alleged must be either obvious to layperson or supported by medical evidence, like physician's diagnosis), Plaintiff cannot prove that Defendants knew of the serious medical needs and deliberately disregarded them. The subjective element of an Eighth Amendment claim requires that an official act with deliberate indifference to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 835-36 (1994). "Deliberate indifference" entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*, at 837. See also, *Bender v. Regier,* 385 F.3d 1133, 1137 (8th Cir. 2004).

The record before the Court shows that Defendant Cabrera, along with other medical personnel, treated Plaintiff on a number of occasions, and Plaintiff refused to see Dr. Cabrera on one occasion. Plaintiff's medical records show that medical personnel conducted physical examinations, evaluated Plaintiff's complaints and concerns and ordered x-rays and tests when warranted. Plaintiff was seen by Dr. Wanless, an outside physician who determined that surgery was not necessary.

Further, in consultation with Dr. Wanless, Dr. Wanless' opinion was that surgery would be minimally effective. This course of treatment was consistent with Plaintiff's medical needs.

Plaintiff seeks specific types of treatment and claims that the failure to provide this specific treatment rises to the level of a constitutional violation. Plaintiff's disagreement with his treatment is, however, misplaced. *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir.1997) (prison doctors remain free to exercise their independent medical judgment).

In the face of medical records indicating that treatment was provided an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment. *Dulany*, 132 F.3d at 1234.

Plaintiff fails to establish the personal involvement of Defendants Conley and Campbell. Such failure is fatal to Plaintiffs' claims against them. It is well settled that there is no respondeat superior liability under § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir.1995). Accordingly, supervisory personnel are not liable under § 1983 absent a showing that "the supervisor [was] personally involved in the violation" or that "the supervisor's corrective inaction constitute[d] deliberate indifference toward the violation." *Id.* (citation omitted). In particular, the plaintiff must show that the supervisor knew about the conduct and facilitated it,

approved it, condoned it, or turned a blind eye to it. Id. (citations omitted); see also *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir.1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.").

Plaintiff admits that Dr. Conley was not personally involved in the alleged violation. Likewise, there is no evidence that Defendant Campbell was personally involved in Plaintiff's treatment.

Rather than creating a genuine dispute of material fact, this evidence shows that neither of these defendants was personally involved in Plaintiff's treatment decisions, or took corrective inaction. See *Boyd*, 47 F.3d at 968. Accordingly, these defendants are entitled to summary judgment on Plaintiff's Complaint and will be dismissed from this action. See Fed.R.Civ.P. 56(c); *Boyd*, 47 F.3d at 968.

With respect to Dr. Bredeman, Plaintiff admits he never met this Defendant, rather, the claim against Bredeman is that he reviewed a referral request from Dr. Cabrera. Given the second x-ray, Dr. Bredeman noted that there were no new findings, and therefore the request for the outside referral was denied. Bredeman suggested that Cabrera consult with Dr. Wanless regarding Plaintiff's condition. Bredeman left open the possibility of Cabrera resubmitting his referral based on the consultation. Without more, Plaintiff has failed to establish that Bredeman had

knowledge of, and was deliberately indifferent to a serious medical need. Bredeman clearly was not deliberately indifferent, rather, he assessed Plaintiff's condition, medical records and the previous opinions and concluded that the outside referral was not needed at the time.

Defendant Corizon, Inc. is also entitled to judgment as a matter of law. Because Plaintiff has presented no evidence of a Corizon, Inc. policy or custom relevant to Plaintiff's claims, summary judgment is proper . See *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir.1993) (corporate liability under § 1983).

### Conclusion

Based upon the foregoing, plaintiff has failed to present any genuine disputes as to any material fact to establish that Defendants have violated his constitutional rights in violation of Section 1983. They are, therefore, entitled to judgement as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 54] is **granted**.

**IT IS FURTHER ORDERED** that judgment in their favor shall be entered

when all remaining issues herein have been resolved.

Dated this 29th day of January, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE